**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| **SPHERETEX GMBH,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No. 3:20cv53-NKM |
| | : |
| **CARBON-CORE CORP.,** | : |
| | : |
| Defendant. | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S FIRST MOTION TO DISMISS**

COMES NOW Defendant Carbon-Core Corp. ("Defendant"), by and through its undersigned counsel, and submits this Memorandum of Law in Support of its Motion to Dismiss for Failure to Join an Indispensable and Necessary Party and for Lack of Subject Matter Jurisdiction pursuant to Rules 19(a) and 12(b)(1) of the Federal Rules of Civil Procedure ("Motion"), respectfully, or, alternatively, for *Forum Non Conveniens* and under the Doctrine of International Comity, and state as follows:

**I.     BACKGROUND**

Defendant is a corporation organized and existing under the laws of the Commonwealth of Virginia. [DE 1, ¶ 7]. Plaintiff, Spheretex GmbH ("Plaintiff"), is purportedly a German limited liability company, with its principal place of business located in Germany. [*Id.*, ¶ 6]. Mr. Siegfried Gerhards ("Mr. Gerhards") is purportedly Plaintiff's former Chief Executive Officer ("CEO") [*Id.*, ¶ 3]. Upon information, Mr. Gerhards resides in Germany. Mr. Gerhards is also purportedly the founder of ESGE Tech GmbH & Co. KG, a German limited partnership, and

1

ESGE-Tech Verwaltungs GmbH (a German limited liability company), the latter of which was purportedly later renamed to Carbon Core Europe GmbH (collectively, "ESGE"). [*Id.*, ¶¶ 4, 26].

Plaintiff alleges that for more than 30 years it has been a leading manufacturer of laminable core products under its SPHERETEX (U.S. Trademark Reg. No. 4,078,591) and SPHERECORE (U.S. Trademark Reg. No. 2,004,038) trademarks (collectively, Plaintiff's Marks"). [*Id.*, ¶ 11, 50]. Plaintiff alleges that at some point it was the only manufacturer using glass fibers instead of polyester fibers in production of its laminate bulkers. [*Id.*, ¶ 12]. Plaintiff does not allege that it holds any patents associated with its production of laminate core products, including, but not limited to, its laminate bulkers. Rather, Plaintiff alleges that its production, and associated process of laminate core products, is protected as trade secrets ("Trade Secrets"). [*Id.*, ¶ 19].

Plaintiff alleges that Mr. Gerhards and Plaintiff mutually agreed to end Mr. Gerhards' employment as CEO of Plaintiff effective March 31, 2017, subject to a series of written agreements (collectively, the "Severance Agreements"). [*Id.*, ¶ 17]. The Severance Agreements were not attached as an exhibit to the Complaint in this matter. Plaintiff alleges that when Mr. Gerhards returned his company laptop on March 31, 2017, all files relating to Plaintiff, including all emails to and from Mr. Gerhards' company email account, had been permanently deleted using a file shredding program. [*Id.*, ¶ 17]. Plaintiff did not allege whether or not Mr. Gerhards had made a copy of such contents prior to its destruction.

Nevertheless, Plaintiff alleges that Mr. Gerhards, its former CEO, misappropriated Plaintiff's Trade Secrets and collaborated with Defendant in order to, *inter alia*, recreate the unique machinery needed to manufacture Plaintiff's key laminate bulker products. [*Id.*, ¶ 29]. Plaintiff further alleges that Defendant imported certain materials from ESGE, the German

entities owned and operated by Mr. Gerhards, in order to manufacturer competitive laminate bulker products. [*Id*., ¶¶ 27, 30]. Plaintiff alleges that Defendant sells competitive laminate core products under its SPHERECEL trademark (U.S. Trademark Reg. No. 5,957,182) ("Defendant's Mark"). [*Id*., ¶¶ 28, 31]. Plaintiff alleges that Defendant's use of Defendant's Mark is likely to, *inter alia*, cause confusion with Plaintiff's Marks. [*Id*., ¶¶ 51, 59].

A commercial impression or product packaging comparison was not included in the Complaint or attached as an exhibit to the Complaint in this matter. Plaintiff has not alleged any instances of actual confusion between Plaintiff's Marks and Defendant's Mark. Rather, to the contrary, Plaintiff has alleged that it received a call from one of its U.S. customers, who informed Plaintiff that the customer was now buying a competing laminate bulker from Defendant, not Plaintiff's SPHERECORE product, implying that no confusion existed. [*Id*., ¶ 34]. Plaintiff further alleges that a week later another of Plaintiff's customers informed Plaintiff that the SPHERECORE product that the customer had purchased through Defendant had been delivered in SPHERECEL packaging, again implying that no confusion existed and that the customer was keenly aware of the difference. [*Id*., ¶ 35].

Plaintiff further alleges that, *inter alia*, by Defendant selling competitive laminate core products under Defendant's Mark that Defendant is in breach of contract with Plaintiff. [*Id*., ¶ 40]. Plaintiff alleges that it entered into a Distribution Agreement on or around July 1, 2014, with Defendant that provided for Defendant to be the exclusive distributor of Plaintiff's products in the United States and Canada (the "2014 Distribution Agreement"). [*Id*., ¶ 13]. The 2014 Distribution Agreement was not attached as an exhibit to the Complaint in this matter. Plaintiff alleges that in April 2017, Plaintiff and Defendant entered into a new exclusive distribution

agreement, attached as <u>Exhibit 1</u> to the Complaint (the "<u>2017 Distribution Agreement</u>"). [*Id.*, ¶ 22].

Plaintiff brings this instant action against Defendant for breach of contract, trade secret misappropriation, and trademark infringement. [*Id.*, ¶ 2]. Neither Mr. Gerhards nor either of the ESGE entities are named as defendants in this matter, despite the clear fact that each are central to all claims alleged by Plaintiff herein. Moreover, assuming *arguendo* for the purposes of this Motion only that the 2017 Distribution Agreement remains in full force and effect and that the term of the 2017 Distribution Agreement has not otherwise automatically expired[1], interpretation of the 2017 Distribution Agreement is governed by the laws of the Federal Republic of Germany as set forth in Section 10.1 therein. [DE 1-1, Exhibit 1; *see also*, DE 1, ¶ 25].

## II.    PROCEDURAL HISTORY

Plaintiff filed the underlying action against Defendant on September 2, 2020. [DE 1]. Defendant was served on September 8, 2020. [DE 6]. On September 24, 2020, Defendant, by and through its undersigned counsel, moved for an extension of time to file responsive pleadings. [DE 8]. On September 28, 2020, this Court granted Defendant's motion for an extension of time to file responsive pleadings up to and including October 19, 2020. [DE 11].

## III.   LEGAL STANDARD

When adjudicating a motion to dismiss under Federal Rule of Civil Procedure 19, a district court asks first whether the non-joined party is necessary under Rule 19(a) and then

---

[1] Defendant reserves the right to challenge the enforceability of the 2017 Distribution Agreement or any agreement between Plaintiff and Defendant. Defendant opines that the 2017 Distribution Agreement has expired automatically pursuant Section 2.2, which will be the subject matter of further briefing in a subsequent motion if this Motion is denied.

whether the party is indispensable under Rule 19(b). *See Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). Dismissal, though "a drastic remedy that should be employed only sparingly," is "required" if the non-joined party "is both necessary and indispensable." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (alteration and internal quotation marks omitted). That determination "must be made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). If the non-joined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999); *see also Gunvor SA v. Kayablian*, 948 F.3d 214, 218–19 (4th Cir. 2020).

A defendant bringing a Rule 12(b)(1) motion may contend that the complaint simply "fails to allege facts upon which subject matter jurisdiction is based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). In that case, "all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id*. Thus, the standard to determine a motion to dismiss pursuant to Federal Rule 12(b)(1) and 12(b)(6) is the same. *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. *Miller v. Carolinas Healthcare Sys.*, 561 F. App'x 239, 240 (4th Cir.), cert. denied, 135 S. Ct. 677, 190 L. Ed. 2d 393 (2014). To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby

'nudg[ing] their claims across the line from conceivable to plausible.' *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 L.Ed.2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted).

When deciding a motion to dismiss, the plaintiff's factual allegations should be taken as true. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). This principle does not, however, apply to "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations and citations omitted). *See also, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Alternatively, a Court may dismiss an action on *forum non conveniens* grounds when (1) there is an alternative, adequate forum that is available to all defendants, and (2) balancing the public and private interests, the action may be brought in a foreign jurisdiction which would be more convenient than remaining in the plaintiff's choice of forum. *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir.2011). Usually, an alternative forum is available when the defendants

are "amenable to process" there. *Tang*, 656 F.3d at 249 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

## IV.   ARGUMENT

This dispute at its core is essentially a dispute between Plaintiff and its former CEO, Mr. Gerhards (and entities controlled or operated by Mr. Gerhards), all of which are citizens of Germany. Plaintiff, however, strategically determined to exclude Mr. Gerhards and the ESGE entities from this action in an attempt to assert foreign claims against Defendant in a forum where it would be difficult for Defendant to obtain discovery and witness testimony in defense of Plaintiff's claims, especially without the addition of Mr. Gerhards and ESGE. A more convenient forum, which Plaintiff has already consented to, would be Germany, given the location of central parties (Plaintiff, Mr. Gerhards, and ESGE) and discoverable information in their possession. Irrespective of the foregoing, Plaintiff's claims are fatal though as it failed to add indispensable parties, knowing that by adding such parties, that subject matter jurisdiction would be destroyed.

### A.   The Complaint should be dismissed for lack of subject matter jurisdiction as German foreign citizens ESGE and Mr. Gerhards are all necessary and indispensable parties under Fed. R. Civ. P. 19.

The Complaint should be dismissed for lack of subject matter jurisdiction because ESGE, compromised of ESGE Tech GmbH & Co. KG, a German limited partnership, and ESGE-Tech Verwaltungs GmbH, a German limited liability company, the latter of which was purportedly later renamed to Carbon Core Europe GmbH, are indispensable parties whose presence would destroy diversity jurisdiction. In addition, assuming *arguendo* that Mr. Gerhards is equally a resident of Germany, which is believed to be the case given that he is the former CEO of Plaintiff, which is based in Germany, and also created two German entities as discussed *supra*, he is also an indispensable party whose presence would further destroy diversity jurisdiction.

Fed. R. Civ. P. 19 "sets forth a two-step inquiry for courts to determine whether a party is 'necessary' and 'indispensable.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014); accord *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). First, the Court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Home Buyers*, 750 F.3d at 433 (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir.1999)). Second, if the party is necessary but would destroy diversity jurisdiction, "the court must decide under Rule 19(b) 'whether the proceeding can continue in that party's absence.'" *Id*.

      i.    <u>ESGE and Mr. Gerhards have an interest in this action but an inability to protect that interest here in the United States.</u>

ESGE and/or Mr. Gerhards are necessary if any of them "claim an interest relating to the subject of the action," Fed R. Civ. P. 19(a)(1)(B), and adjudicating the matter in any of their absence could either "as a practical matter impair or impede [their] ability to protect the interest," *id*. 19(a)(1)(B)(i), or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," *id*. 19(a)(1)(B)(ii).

Plaintiff has alleged, which Defendant denies, that without Defendant misappropriating Plaintiff's Trade Secrets through, and in collaboration with Plaintiff's ex-CEO, Mr. Gerhards, Defendant would not know how to manufacture laminate bulkers using glass fibers. [DE 1, ¶ 12]. Plaintiff has further alleged, which Defendant also denies, that without ESGE importing to Defendant acrylic binder and glass fiber veil, Defendant would not have the capability to manufacture laminate bulkers using glass fibers. [*Id*., ¶ 27]. ESGE and Mr. Gerhards claim an unambiguous interest in the fact whether or not Mr. Gerhards misappropriated any Trade Secrets from Plaintiff, the core of the parties' dispute, and used those Trade Secrets under ESGE to import materials to Defendant in order to enable Defendant to create a competitive product.

Although Plaintiff has failed to adequately plead essential elements of its claim against Mr. Gerhards or ESGE, other allegations of Plaintiff are sufficiently detailed to defeat its case. *See N. Tr. Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) ("More is not necessarily better under the Federal Rules; a party 'can plead himself out of court by unnecessarily alleging facts which ... demonstrate that he has no legal claim.'"; *Bender v. Suburban Hosp.*, 998 F. Supp. 631, 632 (D. Md.), aff'd, 159 F.3d 186 (4th Cir. 1998) ("[I]f a plaintiff chooses to 'plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court.'"). Plaintiff's allegations, ***most based solely on [unidentified] information and belief***, repeatedly reveal the centrality of ESGE and Mr. Gerhards interests in this action, with ESGE and/or Mr. Gerhards identified in 18 separate sentences in the first 36 enumerated paragraphs (alleged facts prior to actual claims alleged) in the Complaint:

1. In 2017, Plaintiff and Mr. Gerhards, Plaintiff's CEO since 2010, mutually agreed to end Mr. Gerhards's employment as Plaintiff's CEO. Before leaving the company, Mr. Gerhards improperly took Plaintiff's Trade Secrets with him, including product formulas, know-how needed to re-create the unique machine assembly to manufacture Plaintiff's products, and specific manufacturing processes for Plaintiff's key laminate bulker product lines. [DE 1, ¶ 3].

2. While still acting as Plaintiff's CEO, Mr. Gerhards formed a new company in Germany (later renamed "Carbon Core Europe GmbH"), which collaborated with Defendant [similarly named Carbon Core] during the term of its exclusive distribution agreement with Plaintiff to manufacture and sell competing products that are indistinguishable from Plaintiff's own key product lines. [*Id.*, ¶ 4].

3.  Defendant designed and manufactured its competing product lines by utilizing Plaintiff's trade secrets, which Defendant misappropriated through, and in collaboration with, Plaintiff's ex-CEO, Mr. Gerhards. [*Id.*, ¶ 12].

4.  Mr. Gerhards served as Plaintiff's CEO between 2010 and 2017. [*Id.*, ¶ 16].

5.  In his capacity as CEO, Mr. Gerhards had knowledge of and access to Plaintiff's Trade Secrets concerning its laminate bulker products, including, without limitation, Plaintiff's product formulas, unique machinery configurations, and manufacturing processes. [*Id.*].

6.  In or around February 2017, Plaintiff and Mr. Gerhards mutually agreed to end his employment as CEO, effective March 31, 2017. [*Id.*].

7.  As part of Mr. Gerhards's termination, Plaintiff and Mr. Gerhards entered into a series of Severance Agreements which governed the parties' respective rights and obligations regarding the mutual termination of Mr. Gerhards's employment. [*Id.*, ¶ 17].

8.  Among other provisions, the Severance Agreements required Mr. Gerhards to return all documents, data, and information pertaining to Plaintiff on or before March 31, 2017. [*Id.*].

9.  However, when Mr. Gerhards returned his company laptop on March 31, 2017, all files relating to Plaintiff, including all emails to and from Mr. Gerhards's company email account, had been permanently deleted using a file shredding program. [*Id.*].

10. Mr. Gerhards improperly took Plaintiff's Trade Secrets with him, including product formulas and manufacturing processes for Plaintiff's key product lines, among others, Plaintiff's signature fiberglass-based products. [*Id.*, ¶ 18].

11. At all relevant times, Plaintiff took reasonable measures to protect its Trade Secrets against disclosure, among other things, by limiting access to all Trade Secrets to only those employees who needed to know (including Mr. Gerhards) and whose job responsibilities require access to the Trade Secrets. [*Id.*, ¶ 20].

12. In April or May 2017, while he was still acting as Plaintiff's consultant after the end his employment as CEO, Mr. Gerhards formed two new companies in Germany, named ESGE Tech GmbH & Co. KG (a German limited partnership) and ESGE-Tech Verwaltungs GmbH (a German limited liability company). [*Id.*, ¶ 26].

13. ESGE-Tech Verwaltungs GmbH is the general partner of ESGE Tech GmbH & Co. KG. [*Id.*].

14. In August 2017, less than four months after it signed the 2017 Distribution Agreement, Defendant imported acrylic binder and glass fiber veil from and through ESGE. [*Id.*, ¶ 27].

15. Defendant collaborated with Mr. Gerhards to misappropriate Plaintiff's Trade Secrets in order to recreate the unique machinery and complicated configuration needed to manufacture Plaintiff's key laminate bulker products. [*Id.*, ¶ 29].

16. Defendant further collaborated with Mr. Gerhards to use specific methods and intricate processes developed by Plaintiff in order to manufacture its competing products. [*Id.*].

17. In April and August 2019, Defendant imported acrylic binder and other very specific materials necessary to manufacture Plaintiff's key laminate bulker products from ESGE. [*Id.*, ¶ 30].

18. In or around March 2020, dropping all pretenses, ESGE-Tech Verwaltungs GmbH formally changed its name to "Carbon Core Europe GmbH." [*Id*., ¶ 36].

19. Defendant is selling and distributing its SphereCel products through Carbon Core Europe GmbH, in violation of the 2017 Distribution Agreement. [*Id*.].

Clearly, based upon the foregoing allegations, Plaintiff itself believes that Mr. Gerhards and ESGE are central to the claims alleged in this matter.

ESGE Tech GmbH & Co. KG is a German limited partnership, Carbon Core Europe GmbH, formerly ESGE-Tech Verwaltungs GmbH, is a German limited liability company, and Mr. Gerhards is purportedly a German resident, while Plaintiff is also a German limited liability company—all parties are citizens of a foreign state, specifically Germany, for diversity purposes. *See Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254 (4th Cir. 2009). The joinder of ESGE, either one of them, and/or Mr. Gerhards, to the action would prevent the complete diversity of the parties necessary to maintain diversity jurisdiction[2], a basis Plaintiff has asserted for subject matter jurisdiction here, at least as to its breach of contract and trade secret misappropriation claims. [DE 1, ¶ 8].

Further, any forthcoming argument by Plaintiff that neither ESGE nor Mr. Gerhards can claim an interest in this matter due to a failure to appear would be disingenuous, at best. Neither ESGE nor Mr. Gerhards can join this action because like Plaintiff, they are all citizens of Germany and thus deemed foreign citizens for diversity purposes. *See Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254 (4th Cir. 2009). The presence of Plaintiff and any one of ESGE or Mr. Gerhards would destroy diversity jurisdiction. *Id*. Plaintiff, thus, has

---

[2] *See Slavchev* at 254.

tactically, and improperly, prevented central parties to the subject matter herein from entering into the action in this District.

    ii.    <u>Litigating this dispute requires this Court to adjudicate ESGE and Mr. Gerhard's rights and obligations, and any defenses thereof.</u>

Turning to Rule 19(b), the "analysis is not mechanical; rather it is conducted in light of the equities at the particular case at bar." *Schlumberger Indus., Inc., v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994). The first factor, which concerns "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," Fed. R. Civ. P. 19(b)(1), "speaks to many of the same concerns addressed by the necessity analysis under Rule 19(a)(1)(B)," *Home Buyers*, 750 F.3d at 435.

In addition to those allegations discussed above, Plaintiff has alleged that Defendant imports necessary materials from ESGE, entities owned and operated by Mr. Gerhards, and that one of those entities operates under Carbon Core Europe GmbH, a name nearly identical to Defendant. Surely, then, both Mr. Gerhards and ESGE would clearly have an interest in this matter. Assuming *arguendo* that Plaintiff prevailed, which Defendant summarily denies as even having the slightest possibility based upon the relief sought, Defendant would no longer have the ability to obtain raw materials necessary in the manufacture of its laminate bulkers, as alleged by Plaintiff; meaning, ESGE would lose a customer to import materials based on the allegations herein. Moreover, if Defendant would be required to change its name, which is shared in large part with ESGE's successor name, this would undoubtedly have an effect on those parties' global branding. An adverse judgment then rendered in either ESGE or Mr. Gerhards' absence would surely prejudice both ESGE and Mr. Gerhards.

The second factor addresses "the extent to which any prejudice could be lessened or avoided by" "protective provisions in the judgment," "shaping the relief," or "other measures."

Fed. R. Civ. P. 19(b)(2). Plaintiff has not identified how the district Court could structure any judgment to avoid prejudice to either ESGE or Mr. Gerhards in its relief sought.

The third factor asks, "whether a judgment rendered in the person's absence would be adequate." Fed R. Civ. P. 19(b)(3). This factor "focuses on the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Home Buyers*, 750 F.3d at 436 (internal quotation marks omitted). Given the extensive allegations against ESGE and Mr. Gerhards in Plaintiff's complaint, not joining ESGE and Mr. Gerhards here could lead to parallel or subsequent litigation or indemnification actions, including in Germany, all of which could produce incomplete, inconsistent, and inefficient settlement of this dispute. Surely German Courts would have jurisdiction over Plaintiff, ESGE, and Mr. Gerhards, its own citizens.

The fourth and final factor looks to "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Plaintiff has an adequate remedy in the absence of federal litigation in this District: Plaintiff is free to seek relief in Germany, as agreed to by Defendant under Section 10.2 of the 2017 Distribution Agreement. See DE 1-1; see also *Home Buyers*, 750 F.3d at 436; *Schlumberger*, 36 F.3d at 1288.

This analysis confirms that ESGE and Mr. Gerhards are all necessary and indispensable parties.

### B. Alternatively, the Court should dismiss this action for *forum non conveniens*.

Ordinarily, a plaintiff's choice of forum is entitled to deference. That is not true, however, when a plaintiff is a foreign entity who chooses to sue in the United States on what is essentially a foreign claim. *See Piper*, 454 U.S. at 235. As the Second Circuit explained in *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003):

> "when a foreign plaintiff sues in a United States forum such choice is entitled to
> less deference because one may not easily presume that choice is convenient … In

> such circumstances, it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection. Even absent those forum-shopping considerations, there still is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit."

329 F.3d at 71. *See also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) ("the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons. . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.") (footnotes omitted). As a foreign plaintiff shopping for a United States forum for its foreign claims (e.g., all claims stemming from misappropriation of Trade Secrets in Germany by German citizens), Plaintiff's choice of this forum is entitled to no deference.

i. <u>Germany provides an adequate alternative forum</u>.

Generally, an adequate alternative forum exists "when the defendant is amenable to process in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (internal quotations and citations omitted). "A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (citations omitted). Furthermore, Defendant consents to jurisdiction of the German courts pursuant to Sections 10.1 and 10.2 of the 2017 Distribution Agreement. DE 1-1, Exhibit 1; *See also DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000) (agreement by defendant to submit to jurisdiction of foreign forum satisfies requirement that defendant be amenable to process in that forum).

ii. <u>Balancing private and public interest facts strongly supports dismissal</u>.

If the alternative forum is both available and adequate, the district court must weigh the public and private interest factors. The factors articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert* guide a court's *forum non conveniens* assessment. 330 U.S. 501 (1947). All *Gilbert* factors support dismissal here. *Id*.

        a.      <u>The Private Interest Factors Strongly Favor Dismissal</u>

The private interest factors include "(a) the relative ease of access to sources of proof; (b) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses… and (c) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508-09.

        i.      <u>Relative Ease of Access to Proof</u>

This factor weighs heavily in favor of Germany as the proper forum. All the critical events occurred in Germany as to Mr. Gerhards' alleged misappropriation of Plaintiff's Trade Secrets, which serve as the foundation of the facts alleged in the Complaint. All documents relating to Plaintiff, ESGE, and Mr. Gerhards are located in Germany. Many documents may need to be translated into English from German and authenticated. It would be time consuming and expensive to translate the numerous documents likely relevant to this action in order to present them as evidence in this Court. This factor strongly favors Germany. *See E.g., Rigroup LLC v. Trefonisco Mgmt.*, 949 F. Supp. 2d 546, 556 (S.D.N.Y. 2013) ("private interest factors weigh heavily in favor of dismissal… virtually all of the relevant documentary evidence is in Russia" and in Russian).

        ii.      <u>Witnesses</u>

Mr. Gerhards, a principal witness, if not otherwise a necessary and indispensable party, is purportedly located in Germany. This information is based on the fact he is the ex-CEO of

Plaintiff, a company located in Germany, and that he started and continues to operate at least two businesses formed and located in Germany (e.g., ESGE, and each of them, are located in Germany). Employees of Plaintiff and ESGE are all located in Germany. Further, there are additional German witnesses that may be required to testify, all of whom are located in Germany and who may not be willing to come to the United States to testify. Such travel would be time consuming and expensive. Some may not even speak English. In addition, it would be time consuming and difficult for certain witnesses to obtain travel visas to enter the United States given COVID-19 and associated travel restrictions. These potential witnesses, as foreign citizens, are not subject to the subpoena power of this Court. Their independent testimony, however, would provide significant insight into the dispute between the parties as to the subject matter identified herein.

Defendant will be unnecessarily prejudiced without the testimony of these witnesses. In Germany, these witnesses can testify in person in their native language without the expense of translation and travel. This factor strongly favors Germany as the proper form. *E.g., V & S Vin & Sprit Aktiebalog v. Hanson*, 146 F. Supp. 2d 796, 800-801 (E.D. Va. June 8, 2001) (noting that "Defendant's private interest for dismissal is very strong," where all witnesses and relevant documents are located in Australia and "[t]he cost of obtaining the attendance of many of the witnesses, who are in Australia, would be high, and unwilling witnesses cannot be compelled to appear in the United States.").

### iii.    Other Practical Concerns

In addition to the aforementioned factors, other practical concerns that "would make trial easy, expeditious, and less expensive," are relevant to the forum *non conveniens* inquiry. *Gilbert*, 330 U.S. at 509. Many of these concerns are implicated instantly.

If litigated in this Court, Defendant may need to translate numerous German legal documents and would certainly need to retain and pay for a German legal expert to do extensive reports and testify as to interpretation of the 2017 Distribution Agreement under German law given that Section 10.1 requires the interpretation thereof to be "governed by, and be construed in accordance with the laws of the Federal Republic of Germany, without regard to principles of conflicts of laws and without regard to the UN Convention on the Sales of Goods". *See* DE 1-1, Exhibit 1.

All issues regarding German law can be avoided if the dispute is litigated in Germany where German judges will consider prior German decisions and no legal experts will be required. *Interpane Coatings, Inc. v. Australia & New Zealand Banking Group, Ltd.,* 732 F. Supp. 909, 917 (N.D. Ill. 1990) (dismissing for *forum non conveniens*, finding the added burden of expert witnesses on foreign law "affects not only the public interest in avoiding wasted time, but also the private interest in avoiding excessive inconvenience and expense"). *See Roynat, Inc. v. Richmond Transp. Corp.,* 772 F. Supp. 417, 422 (S.D. Ind. 1991) (dismissing in favor of Canada, finding

> "general practical issues tilts the balance of private interest concerns in favor of dismissal, due primarily to the practical difficulties caused by the applicability of Canadian law. If this Court were to hear RoyNat's claims, it would face the substantial task of interpreting and applying Canadian law… The Court… would be forced to depend… on experts in Canadian law. These experts… would have to travel a great distance to testify, which would cost the parties more time and money. A Canadian court, by contrast, would not require such experts…");

*see also, Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.,* 744 F. Supp. 450, 460-462 (S.D.N.Y. 1990) (dismissing in favor of Italy where "all of the witnesses and documents relating to the contractual aspect of [the] dispute [over control of Italian corporation] are located in Italy,

as the contract was negotiated and executed finding that the litigation "would be waged, needlessly and, indeed, wastefully" if proceeded in the U.S.).

In sum, the expense and complicated logistics of securing the testimony of multiple non-Americans, who may not be able to obtain travel visas given the COVID-19 pandemic, thousands of miles from their homes, could be avoided by dismissing this case. It would be significantly easier, more expeditious, and cost-effective to litigate this case in Germany, instead of Virginia, if Plaintiff still desires to further litigate this matter notwithstanding Defendant's other defenses. Accordingly, the private interest factors weigh heavily in Defendant's favor.

b.     The Public Interest Factors Strongly Favor Dismissal

The public interest factors include: (a) administrative difficulties for courts "when litigation is piled up in congested centers instead of being handled at its origin"; (b) the burden of jury duty on a community "which has no relation to the litigation"; (c) the local interest in "having localized controversies decided at home"; and (d) the avoidance of problems associated with applying foreign law. *Gilbert*, 330 U.S. at 508. All factors weigh heavily in favor of dismissal, as this claim should be heard in a German court.

i.     Congestion of the Courts

While the Federal District Court for the Eastern District of Virginia has a well-known reputation as the "Rocket Docket," there is no evidence to compare docket conditions in Germany with those in this District. Therefore, the factor of court congestion is neutral. Further, it is unreasonable to burden this Court with a dispute that bears little, if any, relation to this forum, other than attenuated and factually unsupported claims of trademark infringement.

ii.     There Is No Reason to Burden Jurors for This Dispute

This litigation has no true *bona fide* connection to this District. The case concerns

German entities and individuals who dispute the misappropriation of Trade Secrets by a former

officer of a German company. There is no justification to burden an American jury or judge with

this case. *See ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 621 (E.D. Va. 2013) ("[In]

a dispute between Russian companies and individuals regarding activities that occurred primarily

in Russia[,]  [t]he only relationship that jurors in this district have with this case is a small

number of allegedly infringing sales. Therefore, this factor also favors dismissal.")

> iii.   Germany Has an Overwhelming Interest Over the United States in
> Deciding This Dispute

Neither Virginia nor the United States has any interest in deciding the matters at issue

here, namely, whether or not a former officer of a German company stole its Trade Secrets in

starting a competing German company. Plaintiff is not a United States entity. Further, most of

the events alleged to have injured Plaintiff occurred in Germany. In short, other than the

Defendant's business location, Plaintiff's ability to reserve the right to sue Defendant in the

location of its business pursuant to Section 10.2 of the 2017 Distribution Agreement,

unsupported allegations of trademark infringement or confusion, contradicted by facts alleged by

Plaintiff, between Plaintiff's Marks and Defendant's Mark, this case has no nexus to Virginia or

the United States.

However, Germany has an overwhelming interest in this litigation. Specifically,

Germany's interest is in seeing resolution of a dispute between multiple German parties

(Plaintiff, ESGE, and Mr. Gerhards) stemming from actions predominantly alleged against Mr.

Gerhards. *ElcomSoft*, 958 F. Supp. 2d. at 622 ("There is no reason why the parties cannot try

these issues in Russia, where the events giving rise to this litigation occurred"); s*ee also Nowsco

Well Service, Ltd. v. Home Ins. Co.*, 799 F. Supp. 602, 615 (S.D. W. Va. 1991)

("Canada unquestionably has a strong interest in the outcome of this litigation inasmuch as the contracts of insurance allegedly breached by Home were issued there to Nowsco, a Canadian corporation which has its principal place of business in Alberta, Canada. Consequently, Canadian courts and jurors should be called upon to assess the liability of the defendant for breaches of those contracts under the law which that country has pronounced and promulgated and which is applicable to insurers writing policies there.").

iv.    <u>Avoiding Problems of Applying Foreign Law</u>

All the relationships underlying Plaintiff's claims occurred in Germany and will be governed by German law. Thus, notwithstanding Plaintiff's purported invocation of the Lanham Act, this factor strongly supports dismissal in favor of a German forum. As this Court held in similar circumstances in relation to the application of laws of another country from the former Soviet Union:

> [L]itigation of ElcomSoft's state-law claims in this Court will require a conflict of laws analysis. This analysis may well result in the application of Russian law. If the case is dismissed and refiled in Russia, it is unclear whether the Russian courts would apply American, as opposed to Russian, patent law. Based on the evidence presented, the resolution of this case in Russia would enable the avoidance of unnecessary problems in . . . the application of foreign law. Therefore, this factor also weighs in favor of dismissal.

*ElcomSoft* 958 F. Supp. 2d at 621 (internal quotations omitted).

**C. Alternatively, this Court should dismiss this action pursuant to Rule 12(b)(1) based upon the principles of International Comity.**

International comity is defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *In re French v. Liebmann*, 440 F.3d 145, 152 (4th Cir.2006) (citing *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). Further, "'international comity' may… be viewed as a discretionary act of deference by a national court

21

to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called "comity among courts." *In Re Maxwell Commun. Corp. PLC*, 93 F.3d 1036, 1047 (2d Cir. 1996).

ESGE and/or Mr. Gerhards are not parties to this proceeding, and for the reasons stated *supra*, cannot be joined to this proceeding. Plaintiff undoubtedly intends to bring, or has done so already parallel herewith, claims against ESGE and/or Mr. Gerhards in Germany based on the allegations identified in the Complaint. If this Court then exercises its subject matter jurisdiction over the instant case, there is the possibility that a finding of fact or a legal ruling would conflict with those made by a foreign court. *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) (observing that the prospect of dueling courts, conflicting judgments, and attempts to enforce conflicting judgments raise major concerns of international comity); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 939 (D.C. Cir. 1984) ("Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in one action, allowing res judicata to be pled in defense."); *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) (under comity, courts "ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States.") (citations omitted).

In deferring to foreign courts, "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Cunard Steamship Co. v. Salen Reefer Servs. A.B.,* 773 F.2d 452, 457 (2d Cir. 1985) (granting comity to Swedish proceedings); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp. 2d 198, 210 (S.D.N.Y. 2002) (courts may dismiss "in order to extend comity to

related proceedings pending in other countries."). As such, in the alternative, this Court must dismiss this matter given the likelihood, or existence, of claims against German parties unnamed in this action arising from the same facts pled herein. For the very same reasons stated *supra*, any litigation occurring in this Court has an extremely high likelihood of being contrary or prejudicial to the interest of Germany and German citizens wherein such outcome is expected to affect Plaintiff, ESGE, and Mr. Gerhards, all of which are either formed, existing under, or subject to the laws of Germany.

### D. Alternatively, Should This Case Continue in This Court, Jurisdictional Discovery Will Be Necessary.

Though unnecessary at this time, jurisdictional discovery will be necessary to determine the jurisdiction in which Mr. Gerhards resides, which is currently believed to be Germany. Particularly, in the event that this Court denies all other relief requested herein, Defendant will need to confirm, with specificity, where Mr. Gerhards resides.

The Federal Rules of Civil Procedure are generous in scope as to discovery, with district courts having a "broad discretion" in resolving any discovery disputes which arise in matters before them. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (alterations in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). Jurisdictional discovery is appropriate where a plaintiff has offered "only speculation or conclusory assertions" creating "significant gaps in the record." *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018), appeal dismissed, No. 18-1908, 2018 WL 7223994 (4th Cir. Sept. 13, 2018).

As discussed more fully *supra*, Plaintiff has specifically alleged facts which implicate actions by ESGE and Mr. Gerhards. Based on the facts pled by Plaintiff, while it would appear that Mr. Gerhards is a German citizen, Mr. Gerhards' residence and/or place of jurisdiction is

both uncertain and crucial to any continuation of this matter before this Court. Therefore, should this Court deny all other relief requested herein, Defendant requests that this Court permit limited discovery as to Mr. Gerhards' jurisdiction and stay this action to supplement significant gaps in Plaintiff's allegations in this case.

## V.    CONCLUSION

WHEREFORE, Defendant, by and through its undersigned counsel, request that this Court grant Defendant's Motion to Dismiss for Failure to Join an Indispensable and Necessary Party and for Lack of Subject Matter Jurisdiction pursuant, or, alternatively, for *Forum Non Conveniens* and under the Doctrine of International Comity, and for all other relief this Court deems just and proper.

Date: October 19, 2020                                       Respectfully Submitted,

                                                            By Counsel

                                                            /s/ *Robert Powers*
                                                            _____
                                                            Robert Powers, Esq.
                                                            Andrea Harris, Esq.
                                                            MCCLANAHAN POWERS, PLLC
                                                            8133 Leesburg Pike, Suite 130
                                                            Vienna, VA 22182
                                                            Telephone: (703) 520-1326
                                                            Facsimile:  (703) 828-0205
                                                            Email: rpowers@mcplegal.com
                                                                      aharris@mcplegal.com
                                                                      pghale@mcplegal.com
                                                            *Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2020, the foregoing *document* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        By: /s/ *Robert Powers*_____
                                                  Robert Powers, Esq.