# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

SPHERETEX GmbH,

       *Plaintiff,*

  v.

CARBON-CORE CORP.,

       *Defendant.*

CASE NO.: 3:20-CV-00053-NKM

MEMORANDUM OPINION

Judge Norman K. Moon

   The plaintiff in this case, a German manufacturer, has sued the defendant, a company incorporated in Virginia that has its principal place of business in Fluvanna County, Virginia, for trade secret misappropriation, trademark infringement and other claims. Now the Virginia defendant has moved to dismiss, arguing that considerations of convenience for the parties warrant this case being heard in Germany. The German plaintiff argues it should be heard here.

   Defendant argues that the case should be dismissed on three grounds, including failure to join a necessary and indispensable party, and that the common law doctrine of *forum non conveniens* and international comity demand that this case be heard in Germany rather than federal court in Virginia. For the following reasons, the Court rejects Defendant's arguments and denies Defendant's motion to dismiss. Plaintiff properly brought this case here in Virginia against one defendant Virginia company. The parties' contract included a forum selection clause, which gave Plaintiff the right to sue here. Considerations of convenience and ease of access to sources of proof, support retaining the case in Virginia.

Background

Plaintiff Spheretex GmbH is a German company that describes itself as "a leading manufacturer of laminable core products" used in various industries, including "construction, automobiles, marine vessels and watercraft, pools and spas, piping, and medical equipment." Dkt. 1 ¶¶ 6, 11 ("Compl."). These include Plaintiff's "signature Sphere.core and Sphere.tex laminate bulker lines." *Id.* ¶ 11. Plaintiff was "the only manufacturer using glass fibers instead of polyester fibers" to product laminate bulkers. *Id.* ¶ 12. Mr. Siegfried Gerhards was Plaintiff's Chief Executive Officer between 2010 and 2017. *Id.* ¶ 16.

In July 2014, Plaintiff and its U.S.-based subsidiary entered into a distribution agreement with Defendant Carbon-Core. *Id.* ¶ 13 (the "2014 Distribution Agreement"). Therein, the parties agreed that Defendant would be the new exclusive distributor of Plaintiff's products in the United States and Canada. *Id.* The parties also agreed that Defendant would use its best efforts to promote the sale of Plaintiff's products, and that Defendant would not distribute any products that directly competed with Plaintiff's during the term of the agreement. *Id.* ¶ 14. Though the 2014 distribution agreement was run to the end of 2016, it also contained an "evergreen clause," which stated that it would automatically renew for an additional two-year term unless it was terminated six months or more before the end of the term. *Id.* ¶ 13.

In March 2017, Plaintiff and its CEO Mr. Gerhards entered into a series of written agreements providing their mutual agreement that he would end his term as CEO effective March 31, 2017. *Id.* ¶¶ 16–17. Plaintiff alleges in its complaint that the severance agreements provided that Mr. Gerhards was to return "all documents, data, and information pertaining to

Plaintiff on or before March 31, 2017." *Id.* ¶ 17.[1] However, notwithstanding that obligation, Plaintiff alleges that when he returned his laptop, "all files relating to Plaintiff, including all emails to and from Mr. Gerhards's company email account, had been permanently deleted using a file shredding program." *Id.* Plaintiff alleges that it "is informed and believes, and thereon alleges, that Mr. Gerhards improperly took Plaintiff's trade secrets with him, including product formulas and manufacturing processes for Plaintiff's key product lines, among others, Plaintiff's signature fiberglass-based products." *Id.* ¶ 18. Plaintiff alleges that such trade secrets include (1) "the specific type of raw materials and composition of the materials needed to manufacture Plaintiff's products," (2) "the unique one of a kind custom machine assembly needed to manufacture Plaintiff's products," (3) "the specific proprietary methods, formulations and processes of manufacturing Plaintiff's products," and (4) "related confidential technical and business information." *Id.* ¶ 19. Plaintiff also alleges that it took various reasonable measures to product its trade secrets against disclosure, and that such trade secrets were not generally known and derived value from their being secret. *Id.* ¶¶ 20–21.

In April 2017, Plaintiff entered into a new exclusive distribution agreement with Defendant, which had a term beginning May 1, 2017 and ending December 31, 2018. *Id.* ¶ 22 (the "2017 Distribution Agreement"). Like the 2014 Distribution Agreement, this also contained an "evergreen clause," pursuant to which the agreement subsequently renewed for two more one-year terms, through December 31, 2020. *Id.* The 2017 Distribution Agreement also required Defendant to "exercise its best efforts to develop the largest possible market for the Products in the Territory," and further agreed that Defendant would not distribute any products that directly

---

[1] Plaintiff has not attached either its severance agreements with Mr. Gerhards, nor its 2014 distribution agreement with Defendant, to the complaint. Plaintiff has, however, attached its later April 2017 distribution agreement with Defendant. *See* Dkt. 1-1.

competed with Plaintiff's during the term of the agreement. *Id.* ¶ 23; *see also* Dkt. 1-1 at 4

(§§ 4.1, 4.2). It provided, in relevant part, that Defendant "Distributor agrees that it will not

distribute or represent any Laminate Bulker (or any other products manufactured by [Plaintiff]

Company) in the Territory which compete with the Products during the term of this Agreement

or any extensions thereof." Dkt. 1-1 at 4 (§ 4.2). The Agreement further broadly stated that

Defendant "shall not during the term of this Agreement without the prior written consent of the

Company, whether directly or indirectly, itself or through third parties, act for any other

competitor of the Company which produces and/or distributes and/or offers Competitive

Products nor will it establish or conduct or participate in any such competitor or otherwise

support or render advise to such competitor." *Id.* The Agreement also agreed that during the term

of the Agreement and for five years thereafter, "written technical data, drawings, plans and

engineering instructions pertaining to the Products are recognized by Distributor to be secret and

confidential and to be the property of Company." *Id.* at 5 (§ 5).

The parties' 2017 Distribution Agreement contains a choice of forum clause, which states

> The venue for all claims arising from, or based on, this Agreement, shall lie with
> the place of the Company's [Spheretex's] registered office who reserve its right to
> sue the Distributor [Carbon-Core] at the court of its residence.

Dkt. 1-1 at 5 (§ 10.2).

In addition, the contract contains a choice of law clause governing any disputes between

the parties, which provides

> This Agreement shall be governed by, and be construed in accordance with the laws
> of the Federal Republic of Germany, without regard to principles of conflicts of
> laws and without regard to the UN Convention on the Sale of Goods.

*Id.* at 5 (§ 10.1).

4

Plaintiff alleges that in April or May 2017, while Mr. Gerhards was still acting as Plaintiff's consultant, he created two new German companies: ESGE Tech GmbH & Co. KG and ESGE-Tech Verwaltungs GmbH (collectively "ESGE"). Compl. ¶ 26. Plaintiff further alleges that in August 2017—which is less than four months after Plaintiff and Defendant executed the 2017 Distribution Agreement—Defendant "imported acrylic binder and glass fiber veil from and through *ESGE*." *Id.* ¶ 27 (emphasis added). Moreover, Plaintiff alleges that in January and February 2019, Defendant "imported, from Germany, machinery and parts needed to recreate the one of a kind production assembly used by Plaintiff to manufacture its laminate bulker product lines." *Id.* ¶ 29. That "production assembly" was comprised of "nearly a dozen sub-assembly units delivered by third party vendors, and which are, in large parts, designed and developed by Plaintiff and units produced according to Plaintiff's specific specifications." *Id.* Plaintiff alleges on information and belief that "Defendant collaborated with Mr. Gerhards to misappropriate Plaintiff's trade secrets in order to recreate the unique machinery and complicated configuration needed to manufacture Plaintiff's key laminate bulker products." *Id.* Plaintiff further alleges that in April and August 2019, Defendant also "imported acrylic binder and other very specific materials necessary to manufacture Plaintiff's key laminate bulker products from *ESGE*." *Id.* ¶ 30 (emphasis added).

Plaintiff alleges that in November 2018, Defendant applied with the United States Patent and Trademark Office to trademark the name "SphereCel," and identified the goods and services described as "Laminate bulkers in the nature of non-woven bonded polymeric fibers for use in manufacturing." *Id.* ¶ 28. Plaintiff further alleges that in October 2019, Defendant submitted a statement for use of its SphereCel trademark in commerce to the Patent and Trademark Office, as

well as a photograph of the product, which "shows a laminate bulker indistinguishable (other than packaging) from Plaintiff's Sphere.core product." *Id.* ¶ 31.

In December 2019, Defendant's principal, Jack Lugus, emailed Plaintiff that Defendant intended to terminate the 2017 Distribution Agreement. *Id.* ¶ 32. Plaintiff responded that, because Defendant gave notice of intent to terminate less than six-months before the end of the first subsequent term on December 31, 2019, "the agreement automatically renewed for an additional one-year term ending in December 31, 2020," and further "demanded that [Defendant] continue to perform its obligations under the 2017 Distribution Agreement." *Id.* ¶ 33. In February 2020, one of Plaintiff's U.S. customers called and informed Plaintiff that it "was now buying a competing laminate bulker directly from [Defendant], not Plaintiff's Sphere.core product." *Id.* ¶ 34. Less than a week later, another of Plaintiff's customers informed Plaintiff that the Sphere.core product the costumer had purchased through Defendant "had been delivered in 'SphereCel' packaging," which Plaintiff alleges was part of "an effort [by Defendant] to mislead consumers and to pass off Plaintiff's products as its own or otherwise falsely imply a sponsorship by, or affiliation with, Plaintiff." *Id.* ¶ 35. In March 2020, ESGE formally changed its name to "Carbon Core Europe GmbH," and Plaintiff further alleges on information and belief that Defendant "is selling and distributing its SphereCel products through Carbon Core Europe GmbH, in violation of the 2017 Distribution Agreement." *Id.* ¶ 36.

Plaintiff thereafter filed its operative complaint against Defendant only. Dkt. 1. Plaintiff brought four causes of action against Defendant: (1) breach of contract, alleging Defendant's violation of the 2017 Distribution Agreement; (2) trade secret misappropriation, in violation of 18 U.S.C. § 1836; (3) trademark infringement, in violation of 15 U.S.C. § 1114(1)(a), and lastly (4) false or misleading descriptions or misrepresentations of act, violating 15 U.S.C. § 1125(a).

*See* Compl. ¶¶ 37–64. Plaintiff sought compensatory and consequential damages, pre-judgment and post-judgment interest, reasonable attorneys fees, and a "permanent injunction against Defendant and its affiliates, franchises, and/or subsidiaries, and those in active concert with it from doing, abiding, causing, aiding or abetting" use of Plaintiff's trade secrets, using "the Registered Marks, or any colorable imitation or confusingly similar variation of the Registered Marks," "[m]aking any other infringing use of the Registered Marks," and "[o]therwise competing unfairly with Plaintiff." *Id.* at 14–15.

Defendant filed a motion to dismiss this suit on several grounds. Dkts. 12–13. First, Defendant argued that Mr. Gerhards and ESGE were necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure. Second, Defendant, a company organized and operating in Virginia, contended that the case should be dismissed under the doctrine of *forum non conveniens*, thus the case should be heard if anywhere in German courts on the grounds that would be a more convenient and appropriate forum. And third, Defendant argued that similarly the Court should dismiss on the doctrine of international comity in favor of a German forum. Briefing on the motions concluded, the Court heard argument, and the motion is ripe for decision.[2] The Court will address each argument in turn.

<u>Rule 19</u>

Defendant argues that the case must be dismissed because, in their view, Mr. Gerhards and ESGE are not only "necessary" but "indispensable" parties under Rule 19. Dkt. 13 at 7–14; Dkt. 22 at 2–5. Defendant contends that this dispute "at its core is essentially a dispute between

---

[2] The Court had subsequently referred this case to mediation before the Magistrate Judge, staying it and playing it in abeyance in the interim. Dkt. 47. The parties have informed the Court that mediation has been unsuccessful and therefore the Court will lift the stay and the motion will again be ripe for decision. *See* Dkts. 49–51 (status reports).

Plaintiff and its former CEO, Mr. Gerhards (and entities owned or operated by Mr. Gerhards), all of which are citizens of Germany." Dkt. 13 at 7. However, Defendant continues, Plaintiff "strategically determined to exclude Mr. Gerhards and the ESGE entities from this action in an attempt to assert foreign claims against Defendant in a forum where it would be difficult for Defendant to obtain discovery and witness testimony in defense of Plaintiff's claims, especially without the addition of Mr. Gerhards and ESGE." *Id.*

A party may file a motion to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). When considering such a motion, the Court conducts a two-step inquiry. First, the Court must determine "whether the nonjoined party is necessary under Rule 19(a)." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020) (citation omitted). Second, if a party is necessary, the Court must further determine "whether the party is indispensable under Rule 19(b)." *Id.* (citation omitted).

Under Rule 19(a)(1), a party is considered necessary if

(A)    in that person's absence, the court cannot accord complete relief among existing parties;

(B)    that person claims an interest relating to the subject of an action and is so situated that disposing of the action in the person's absence may:

(i)    as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). A necessary party should be ordered to join the action. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).

Rule 19(b) then addresses whether a party is considered indispensable. "If a person who is required to be joined cannot be joined, the court must determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed." Fed.

R. Civ. P. 19(b). A court must consider factors in making this determination, including:

    (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2)    the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

    (3)    whether a judgment rendered in the person's absence would be adequate; and

    (4)    whether the plaintiff would have an adequate remedy in the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc.*, 186 F.3d at 441 (citations omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy … which should be employed only sparingly."). As the movant, Defendant bears the burden to show that Plaintiff failed to join a necessary and indispensable party. *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005); *R-Delight Holding, LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1359 (3d ed. 2007)). The Court concludes that Defendant has not demonstrated that Plaintiff failed to join a necessary or indispensable party.

First, *Gerhards* and *ESGE* have not "claim[ed] an interest relating to the subject of the action." *See* Fed. R. Civ. P. 19(a)(1)(B). Rather, it is *Defendant* that has tried to claim that their interests are at stake—not Gerhards or ESGE. *See McKiver*, 980 F.3d at 951 ("Appellant insists that Kinlaw Farms needed to be made a party to this suit in order to protect its own interests. Yet

Kinlaw Farms did not seek to join the suit or otherwise 'claim[ ] an interest relating to the subject of the action' before the district court, and Appellate did not assert a claim against Kinlaw Farms to bring the grower into the suit.") (citation omitted); *Am. Gen. Life & Acc. Ins. Co.*, 429 F.3d at 93 (affirming district court holding that a third party "had not claimed an interest in the federal action, and therefore, joinder was not required under Rule 19(a)(2)"); *Perkins v. Bennett*, No. 7:14-cv-1057, 2015 WL 1313247, at *6–7 (D.S.C. Mar. 24, 2015) (noting that "[t]he defendants have provided no indication that the absent parties have actually claimed any interest in this action," and holding that "[t]he absent parties' failure to actually claim an interest is sufficient grounds to deny the motion under Rule 19"). Defendant has not, for instance, introduced an affidavit from either party attesting to their interest relating to the subject of the action. *See Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020) (defendant CEO of third-party corporation submitted affidavit on behalf of corporation asserting before the court an interest in the contracts at issue in the action).

Second, even if the Court did not require any further claim of interest by Gerhards and ESGE themselves, Defendant's argument that they are necessary parties fails. Defendant argues that Gerhards and ESGE played a "central" role in the actions underlying the dispute. *See, e.g.*, Dkt. 13 at 9, 12 ("Clearly based on the foregoing allegations, Plaintiff itself believes that Mr. Gerhards and ESGE are central to the claims alleged in this matter."). To be sure, based on the allegations in the Complaint, that would appear to be the case. However, the Fourth Circuit has cautioned that is often not enough: writing that, "[e]ven if an absent party is alleged to have played a central role in the action at issue, and even if resolution of the action will require the court to evaluate the absent party's conduct," "in many cases," that will not be enough under Rule 19(a)(1)(B)(i). *McKiver*, 980 F.3d at 952 (cleaned up; internal quotation marks and citation

omitted). The "interest in question should be more than a financial stake, and more than speculation about a future event." *Id.* Much of Defendant's argument would firmly characterize Mr. Gerhards and ESGE as other, joint-tortfeasors in the alleged misappropriation of Plaintiff's trade secrets and trademark infringement. However, "it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329–30 (1955)). That does not make Mr. Gerhards or ESGE necessary parties. *See, e.g.*, *Sky Cable, LLC v. Coley*, No. 5:11-cv-48, 2012 WL 1016112, at *9 (W.D. Va. Mar. 23, 2012) (Urbanski, J.) ("It may well be that East Coast Cablevision, LLC is a joint tortfeasor in this action. But it is well settled that Rule 19 does not require the mandatory joinder of joint tortfeasors and coconspirators."); *Amari v. Griffin*, 339 F.R.D. 91, 95–96 (W.D. Va. 2021) (collecting authorities and holding that "under the parties' differing theories and allegations, Pollack may be a joint tortfeasor, but this status does not make him a 'necessary' party to this action under Rule 19") (Hoppe, M.J.). Any interests by Mr. Gerhards and ESGE in this action are further limited considering, as Plaintiff readily concedes, that any decision against Defendant in this case "would not be binding on [Mr. Gerhards or ESGE] in any subsequent litigation, as they are not parties to the case." *See* Dkt. 20 at 8; *S. Co. Energy Mkt'g, L.P. v. Va. Elec. & Power Co.*, 190 F.R.D. 182, 186 (E.D. Va. 1999) (holding Rule 19(a)(2)(i) inapplicable "because this action will not prejudice any claim PCA might have with respect to the Entergy transaction," given that "PCA is not a party and therefore not subject to collateral estoppel or res judicata as to this litigation").

Moreover, to the extent Defendant also argues that proceeding with this suit in the absence of Mr. Gerhards and ESGE may put it at a substantial risk of incurring inconsistent

judgments or legal obligations, *see* Dkt. 13 at 8, that does not materially support its argument that they are necessary parties, as "*the mere possibility* of inconsistent results in separate actions" is not enough to require addition of another as a necessary party. *See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (emphasis added). At present, there is no more than such a "mere possibility."

Even if Mr. Gerhards and ESGE were necessary parties (and the Court has concluded that they are not), the Court also determines that they are not indispensable within the meaning of the Rule 19(b) inquiry. In support of Defendant's argument that they are indispensable, it cites Plaintiff's allegation that Defendant "imports necessary materials from ESGE, entities owned and operated by Mr. Gerhards." Dkt. 13 at 13. But Defendant cites no authority for the proposition that a manufacturer has such an interest in litigation involving one of its customers. *See* Dkt. 20 at 8; Dkt. 13 at 13. That is not to say that the Court's ruling in Plaintiff's favor would not result in any adverse effect upon Mr. Gerhards or ESGE. A ruling in Plaintiff's favor could mean that Defendant would be enjoined from purchasing from Mr. Gerhards and ESGE material that was the fruit of trade secret misappropriation or trademark infringement, but still a possible financial loss is not enough. *See McKiver*, 980 F.3d at 952 (cleaned up) (the "interest in question should be more than a financial stake"). And the Court could certainly lessen any prejudice by "shaping the relief," such as limiting the scope of any injunction. *See* Fed. R. Civ. P. 19(b)(2). In other words, any injunctive relief afforded could be shaped only to apply as against *Defendant and its businesses in the United States*, rather than broadly enjoining those "in active concert with" Defendant, Compl. at 15, which could include Mr. Gerhards or ESGE. To the extent Defendant contended that they are indispensable parties because a name change for Defendant

could impact ESGE's "global branding," Dkt. 13 at 13, Plaintiff has clarified that "[t]he Complaint seeks no such relief whatsoever," of any name change. Dkt. 20 at 8–9.

Defendant also argues that not joining Mr. Gerhards or ESGE "could lead to parallel or subsequent litigation," increasing the risk of incomplete or inconsistent judgments, thereby supporting their characterization as indispensable parties. Dkt. 13 at 14. But again, "the mere possibility of inconsistent results in separate actions" is not enough to make a party a necessary party. *See Delgado*, 139 F.3d at 3. Defendant simply has not explained with any specificity why proceeding in this case without Mr. Gerhards and ESGE would result in a *real*, as opposed to merely a *speculative*, risk of inconsistent judgments. Moreover, Defendant's argument in this regard is inconsistent both with this rule and the rule that joint tortfeasors are not necessary parties. And even assuming Mr. Gerhards or ESGE were necessary, "dismissal of a case is 'a drastic remedy that should be employed only sparingly.'" *McKiver*, 980 F.3d at 952 (quoting *Gunvor SA*, 948 F.3d at 219). Lacking any further explanation from Defendant as to how Mr. Gerhards or ESGE's interests would be prejudiced, or how their absence would prejudice Defendant, or would create a real risk of inconsistent judgments, the Court determines that the action should proceed with the existing parties. *See* Fed. R. Civ. P. 19(b). Defendant's argument falls well short of demonstrating that the "drastic remedy" of dismissal would be appropriate on account of Mr. Gerhards' or ESGE's absence.

For these reasons, the Court concludes that Mr. Gerhards and ESGE are neither necessary nor indispensable parties within the meaning of Rule 19.[3]

---

[3] Defendant's argument, advanced in its opening brief, that including Mr. Gerhards or ESGE would destroy diversity jurisdiction is misplaced. *See* Dkt. 13 at 12. As Plaintiff noted in its response brief, the Court also has federal question jurisdiction on the basis of the three federal law claims against Defendant, and may otherwise exercise supplemental jurisdiction of the non-

Forum Non Conveniens

Under the doctrine of *forum non conveniens*, a federal district court "may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 421, 425 (2007). The Supreme Court has made clear that the "central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981). When a litigant moves for dismissal under this doctrine, "[a] district court must determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).

Thus, when the Court conducts its inquiry into whether certain claims should be dismissed on *forum non conveniens* grounds, it must determine, as a threshold matter, "whether there exists an alternative forum" in which such claims can be heard. *Piper Aircraft*, 454 U.S. at 254 n. 22. The burden is on the party seeking dismissal on *forum non conveniens* grounds to show that the proposed alternative forum is adequate and available. *Tang*, 656 F.3d at 248 (citing *Galustian*, 951 F.3d at 731).

If this prerequisite is satisfied and an adequate alternative forum is found to be available, the Court must then weigh the public and private interest factors originally set forth in *Gulf Oil v. Gilbert,* 330 U.S. 501, 506–07 (1947). *See Tang*, 656 F.3d at 249.

The private interest factors are: (1) the "relative ease of access to sources of proof;" (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining

---

federal breach of contract claim. *See* Dkt. 20 at 3–4; Compl. ¶¶ 42–64. Defendant does not press its jurisdictional argument in reply. Dkt. 22 at 3 n. 1.

14

attendance of willing, witnesses;" (3) the "possibility of view of premises, if view would be appropriate to the action;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Tang*, 656 F.3d at 249 (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6). The public interest factors are: (1) the "administrative difficulties flowing from court congestion;" (2) the "local interest in having localized controversies decided at home;" (3) the "avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and (4) the "unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* at 249 (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6).

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 430. "A defendant seeking dismissal against a non-citizen plaintiff must make a showing that the 'relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum.'" *DiFederico v. Marriott Int'l Inc.*, 714 F.3d 796, 802 (4th Cir. 2013) (quoting *Tang*, 656 F.3d at 246) (emphasis in *DiFederico*). "Supreme Court precedent commands that a citizen plaintiff's choice of forum is entitled to even greater deference when the plaintiff chooses her 'home forum.'" *Id.* at 802–03 (citation omitted). By contrast, courts afford less deference to a plaintiff's chosen forum when it is not the plaintiff's home country, however that "lack of deference is muted," when "the defendant is a resident and citizen of the forum he seeks to have declared inconvenient for litigation …." *Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010); *accord Charles v. Sacoolas*, No. 1:20-cv-1052, 2021 WL 5105029, at *4 (E.D. Va. Feb. 16, 2021); *Millennium Inorganic Chems. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 686 F. Supp. 2d 558, 561 (D. Md. 2010).

Here, Plaintiff is a German company and thus a non-citizen plaintiff, while Defendant is "a resident and citizen of the forum he seeks to have declared inconvenient for litigation." *See Galustian*, 591 F.3d at 732; Compl. ¶¶ 6–7. As a result, the typical "lack of deference" afforded to the non-resident Plaintiff's choice of forum is "muted." *See Galustian*, 591 F.3d at 732; Compl. ¶ 7; Dkt. 13 at 1. Defendant therefore "must make a showing that the 'relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum.'" *See DiFederico*, 714 F.3d at 802.

       1.   *Whether German Courts are an Available, Adequate Forum*

The Court first considers whether the proposed alternative forum is "available" as well as "adequate." As the moving party, Defendant "bears the burden of showing that an adequate alternative forum exists." *Tang*, 656 F.3d at 248 (citing *Galustian*, 951 F.3d at 731). Thus, Defendant "has the burden to 'provide enough information to the District Court' to demonstrate that the alternative forum is both available and adequate.'" *Galustian*, 951 F.3d at 731 (quoting *Piper Aircraft*, 454 U.S. at 258). Here, Defendant argues that "Germany provides an adequate alternative forum." Dkt. 13 at 15.

Ordinarily, the "availability" requirement is satisfied when the defendant is amenable to process in the foreign jurisdiction. *Galustian*, 951 F.3d at 731 (citing *Piper Aircraft*, 454 U.S. at 254 n. 22). Moreover, the "adequacy" requirement may be met when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy all the same benefits as they might receive in an American court." *Id.* (citation omitted). Defendant asserts that German courts are "available" because "Defendant consents to jurisdiction of the German courts." Dkt. 22 at 5. In its motion to dismiss, Defendant cited Sections 10.1 and 10.2 of the Distribution Agreement to support its

"consent[ ] to the jurisdiction of the German courts." Dkt. 13 at 15. While Plaintiff argues that Defendant's "consent" alone was "not unequivocal," Dkt. 20 at 14, the Court concludes that Defendant's consent to German courts' jurisdiction was unequivocal in its reply if not earlier, Dkt. 22 at 5. Plaintiff further contends Defendant's consent alone is insufficient to establish German courts' availability, without "any evidence to show that German courts would exercise jurisdiction." Dkt. 20 at 14. The Court holds, however, that in view of Defendant's unequivocal consent to the jurisdiction of the German courts and lacking any basis to hold the contrary, that Defendant has provided sufficient support for the Court to find German courts are "available." *See MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, No. 3:09-cv-78, 2010 WL 2757351, at *4 (W.D. Va. July 13, 2010) ("In this case, Arthrex's explicit and unequivocal consent to the jurisdiction of the German courts provides sufficient basis for this Court to find that the 'availability requirement' has been satisfied.") (Citing cases); *Bintu v. Delta Airlines, Inc.*, 860 F. App'x 700, 701 (11th Cir. 2021) (similar).

The Court considers, however, that Defendant has not met its burden to show that the German courts would offer an alternative forum that is *adequate* for purposes of the claims at issue in this case. In addition to Plaintiff's breach of contract claim, Plaintiff has also brought a claim for trademark infringement in violation of 15 U.S.C. § 1114(1)(a), Compl. ¶¶ 49–57, a claim for false or misleading descriptions or representations of fact in violation of 15 U.S.C. § 1125(a), Compl. ¶¶ 58–64, and a claim for trade secret misappropriation in violation of 18 U.S.C. § 1836, Compl. ¶¶ 42–48. There is no real dispute that German courts would not exercise jurisdiction over Plaintiff's statutory, non-contractual claims. Dkt. 20 at 15; Decl. of Dr. Heiko Büsing at 10, Dkt. 20-1 (explaining that "[a] German Court would only consider contractual claims"); Dkt. 22 at 6. To be sure, a foreign jurisdiction would be "adequate" when "all parties

can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy all the same benefits as they might receive in an American court." *Galustian*, 591 F.3d at 731. However, a foreign jurisdiction would not be adequate when the "alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 255 n. 22. Indeed, "[i]t is particularly important that a *forum non conveniens* movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights," and so "district courts have routinely denied motions to dismiss on *forum non conveniens* grounds when United States intellectual property rights form the crux of the dispute." *Halo Creative & Design Ltd. v. Comptoir des Indes Inc.*, 816 F.3d 1366, 1373 (Fed. Cir. 2016); *see also V & S Vin & Sprit Aktiebolag v. Hanson*, 146 F. Supp. 2d 796, 802 (E.D. Va. 2001) (denying motion to dismiss trademark infringement claim on *forum non conveniens* grounds, in part, because "[c]learly, Plaintiff can only obtain relief under the specific statutes at issue—the Lanham Act and the ACPA—in a U.S. court"). Especially in view of Plaintiff's claims for trademark infringement and false or misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), the Court holds that Defendant has not established that German courts constitute an adequate and available forum with respect to resolution of Plaintiff's claims in this case. *See Tang*, 656 F.3d at 248 (citing *Galustian*, 951 F.3d at 731).

   2. *Gilbert's Private Interest Factors*

   Even assuming German courts were both adequate and available, consideration of the private and public interest factors weighs against dismissal on grounds of *forum non conveniens*. *See Tang*, 656 F.3d at 249. *Gilbert*'s first private interest factor is the "relative ease of access to sources of proof." *Gilbert*, 330 U.S. at 508. In Defendant's view, this factor weighs heavily in

favor of a German forum. Dkt. 13 at 16. Defendant contends that "[a]ll the critical events occurred in Germany as to Mr. Gerhards' alleged misappropriation of Plaintiff's Trade Secrets." *Id.* Moreover, Defendant argues that "[a]ll documents relating to Plaintiff, ESGE, and Mr. Gerhards are located in Germany," and many of which "may need to be translated into English from German and authenticated," which "would be time consuming and expensive." *Id.* Yet this is "not a case where the only evidence relevant to certain claims is located overseas." *See MicroAire*, 2010 WL 2757351, at *6. Far from it. Indeed, as Plaintiff argues (and Defendant does not dispute), because Defendant is located in Troy, Virginia, in the Western District of Virginia, presumably its documents would also be in the area. *See* Dkt. 20 at 16–17; Dkt. 22 at 7; Compl. ¶ 7. It appears that some of the most significant evidence in this case (at least as referenced in the complaint), concerns "machinery and parts," and certain other specialty materials (*i.e.*, acrylic binder and glass fiber veil), that Defendant allegedly imported and set up at its facility "to recreate the one of a kind production assembly used by Plaintiff to manufacture its laminate bulker product lines." Compl. ¶¶ 27–31. Indeed, the location of the allegedly infringing production line in this District is relevant to several private interest factors, and significantly tips those factors in favor of retaining the case here. *See Tang*, 656 F.3d at 249 (citing possibility for a "view of premises, if view would be appropriate to the action," as another private interest factor). Similarly, the presence of any other documents and physical evidence in the custody or control of Defendant or its U.S.-based customers further tips the "relative ease of access to sources of proof" factor in favor of this forum. *See* Dkt. 20 at 17.

Of course, this case will likely require translation of certain documents from their original German, as Defendant argues. Dkt. 13 at 16; Dkt. 20 at 18. While the potential need to translate documents impacts this factor, Defendant simply "has not supported these arguments with any

explanation as to the scope or volume of potentially discoverable information," nor "how the accompanying translation costs would be burdensome" to it. *See MicroAire*, 2010 WL 2757351, at *6 (citing cases); *see also* Dkt. 13 at 16–19; Dkt. 22 at 6–7. Not only that, but Plaintiff has submitted (presently uncontradicted) evidence that "all communications between [Plaintiff's] employees and [Defendant's] employees, including [Defendant's] CEO Jack Lugus, were exclusively in English from the beginning of the business relationship." Decl. of Holger Zorn ¶ 3, Dkt. 20-2. Moreover, Plaintiff has introduced evidence that "[a]ll operative documents" between the parties "were also drafted exclusively in English," including "the contracts between the parties, as well as other documents such as price lists, order forms, and invoices." *Id.* ¶ 4. Rather than attempt to rebut those persuasive points that much of the key documentary evidence in this case will be in English, Defendant relies on its "bare assertion" of the need to translate without substantiation, *see* Dkt. 22 at 7, which fails to persuade this Court that this factor weighs in favor of dismissal.

*Gilbert*'s second private interest factor is the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of unwilling, witnesses." *Gilbert*, 330 U.S. at 508. Defendant argues that this factor supports dismissal because Mr. Gerhards is located in Germany, and that employees of Plaintiff and ESGE are also all located in Germany. Dkt. 13 at 16–17. "Further, there are additional German witnesses that may be required to testify, all of whom are located in Germany and who may not be willing to come to the United States to testify." *Id.* at 17. On the one hand, Defendant has not identified any witness who was unwilling to testify, much less provided any evidence to that effect. On the other hand, Plaintiff has offered evidence that it will make its employees available for a remote deposition at mutually agreeable dates and times. Zorn Decl. ¶ 5. The Fourth Circuit has stated that "this factor should be given

20

little weight in the overall balancing scheme when the defendant has not shown that any witness is actually unwilling to testify." *DiFederico*, 714 F.3d at 806.

To be sure, some witnesses likely are beyond the subpoena power of the Court (including a potential significant witness, Mr. Gerhards). *See* Dkt. 13 at 16. But even if Mr. Gerhards or other third parties are unwilling witnesses (and again, the record at present discloses no evidence to that effect), deposition testimony could be obtained by compulsory process issued by a German Court pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (hereinafter, the "Hague Evidence Convention"), to which both the United States and Germany are parties. *See MicroAire*, 2010 WL 2757351, at *7; *In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 364 (D. Kan. 2010) (explaining: "[t]he Hague Convention, of which both the United States and Germany are signatories, provides the mechanism for gathering evidence abroad through the issuance of a letter of request," and that resorting to the Hague Convention "is particularly appropriate when, as here, a litigant seeks to depose a foreign non-party who is not subject to the court's jurisdiction"). This factor also does not weigh in favor of dismissal on this record. And even if it did to some extent, the factor would be given little weight.

To the extent relevant to the other *Gilbert* private interest factor concerning "all other practical problems that make trial of a case easy, expeditious and inexpensive," 330 U.S. at 508; *Tang*, 656 F.3d at 249, Defendant also argues that "the expense and complicated logistics of securing testimony of multiple non-Americans," citing potential problems of obtaining travel visas or traveling during the COVID-19 pandemic. Dkt. 13 at 19. In Defendant's view, it would be "significantly easier, more expeditious, and cost-effective to litigate this case in Germany, instead of Virginia." *Id.* Defendant's description of the number of witnesses who would

potentially need to be called from Germany as opposed to those in Virginia is vague. In any event, the Court considers the potential for expense and logistical complications—though not nonexistent—would be substantially reduced in view of Plaintiff's concession that its employees will be available to testify remotely. *See* Zorn Decl. ¶ 5. The cost and expense at least with respect to testimony from *Defendant and its own witnesses*, would not appear to be a significant part of this private interest factor either, given Defendant's location in Virginia.

Accordingly, the Court considers upon weighing the pertinent private interest factors set forth originally in *Gilbert*, that Defendant has not established that any of the factors weigh in favor of dismissal. Indeed, one factor—the "ease of access to the sources of proof"—weighed significant in favor of retaining the case here, given the centrality of Defendant's production line, and manufacturing process, to Plaintiff's claims. On this record and collectively considering these factors, it would be a significantly lesser inconvenience for the Court to proceed with the case in Virginia than dismissing in favor of a German forum.

3. *Gilbert's Public Interest Factors*

One *Gilbert* public interest factor that weighs in favor of this case being heard in a German court is the application of German law (at least as to Count One, the contract claim). *See Piper Aircraft*, 454 U.S. at 241 n. 6 (citing the "avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"). As described above, the 2017 Distribution Agreement contains a choice of law clause, providing that "[t]his Agreement shall be governed by, and be construed in accordance with the laws of the Federal Republic of Germany, without regard to principles of conflicts of laws and without regard to the UN Convention on the Sale of Goods." Dkt. 1-1 at 5 (§ 10.1). While this factor does weigh somewhat in Defendant's favor, the Court notes nonetheless that "the application of foreign law is still a task that the courts are

competent, and often called-upon, to perform." *MicroAire*, 2010 WL 2757351, at *10 (citing

authorities).

Defendant argues that two related public interest factors weigh in its favor, namely, the

"burden [of jury duty] that ought not to be imposed upon the people of a community which has

no relation to the litigation," and the "local interest in having localized controversies decided at

home." *Gilbert*, 330 U.S. at 508–09.

To be sure, Defendant contends that "[t]his litigation has no true *bona fide* connection to

this District," and argues that "[n]either Virginia nor the United States has any interest in

deciding the matters at issue here, namely, whether or not a former officer of a German company

stole its Trade Secrets in starting a competing German company." Dkt. 13 at 20. The Court

disagrees with Defendant's blinkered characterization of this case, which would improperly seek

to have the Court ignore any allegations in the Complaint concerning *Defendant's* role in the

underlying events, which is far afield from the allegations in the complaint. Many of the facts

alleged in the complaint occurred not in Germany but in Virginia, in this District. The complaint

alleges that Defendant imported into its facility in Virginia the "machinery and parts needed to

recreate" Plaintiff's own production assembly, as well as other "very specific materials" needed

to produce Defendant's competing products from its facility in Virginia, all allegedly in violation

of the terms of the 2017 Distribution Agreement. *See, e.g.*, Compl. ¶¶ 3–4, 7, 9, 12, 27–31. The

complaint alleges facts that several of Plaintiff's customers then either bought Defendant's

competing product during the period Defendant was contractually prohibited from doing so, or

that Defendant had packaged Plaintiff's product in Defendant's own packaging, resulting in a

risk of confusion. *See id.* ¶¶ 34–36. In addition, the complaint alleged that the Defendant (a

Virginia corporation, with its principal place of business in Virginia) entered into a series of

distributor agreements with Plaintiff to serve as its exclusive distributor in the United States and Canada for nearly seven years. *Id.* ¶¶ 13–15, 22–25. It is just not accurate for Defendant to argue that "[t]his litigation has no true *bona fide* connection to this District." Dkt. 13 at 20.

In view of the trademark and trade secret misappropriation claims, as described above, this Virginia forum has a real and significant interest in resolution of those claims, separate and apart from its interest in governing Virginia's companies. *See Halo Creative & Design Ltd.*, 816 F.3d at 1373 (explaining that "[t]he policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey  was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction"); *accord V & S Vin & Sprit Aktiebolag*, 146 F. Supp. 2d at 802. To be sure, some of the conduct alleged appears to have occurred in Germany and that is not to say that jurisdiction would have no connection to the dispute. However, this is not a case where the Plaintiff (a German company) has sued *another* German company in a United States court regarding conduct that arose in Germany. Plaintiff has sued Defendant, a Virginia company, and many of the key allegations at issue in this case and specifically concerning Defendant's own allegedly unlawful conduct arise in Virginia. Defendant's allegedly infringing production assembly line and products would appear to be in Virginia, based on the Complaint.

And lastly, but not insignificantly, the parties' 2017 Distribution Agreement itself contains a choice of forum clause, which provides that Plaintiff had the right to sue Defendant at the court of its [Defendant's] residence. Dkt. 1-1 at 5 (§ 10.2) ("The venue for all claims arising from, or based on, this Agreement, shall lie with the place of the Company's [Spheretex's] registered office who reserve its right to sue the Distributor [Carbon-Core] at the court of its residence."). Plaintiff has chosen to exercise that right by suing here. The Court considers that

the local interest in having localized controversies decided at home, and any burden to jurors in deciding this case, would be fully supported by this Court's retaining this case rather than dismissing in lieu of a German forum. The Court therefore concludes that the *Gilbert* public interest factors also weigh in favor of retaining this case rather than dismissal.[4]

Accordingly, the Court concludes that Defendant has not shown that the German courts would constitute an *adequate*, available forum, for purposes of this case which raises claims of infringement of United States trademarks, among other claims. Moreover, even if German courts were adequate and available, considering the *Gilbert* private and public interest factors, the Court concludes, on balance, that they weigh decisively in favor of retaining this case in this federal Court in Virginia rather than dismissing in lieu of a German forum. The Court will therefore deny Defendant's motion to dismiss the case on *forum non conveniens* grounds.

<u>International Comity</u>

Lastly, Defendant argues that this case should be dismissed on grounds of international comity. *See* Dkt. 13 at 21–23. Defendant's cursory arguments in this regard largely track its prior arguments, reiterating that Mr. Gerhards and ESGE are not parties, and contending that it believes "Plaintiff undoubtedly intends to bring, or has already brought parallel herewith, claims against ESGE and/or Mr. Gerhards in Germany based on the allegations identified in the Complaint." *Id.* at 22. Thus, Defendant argues, "there is the possibility that a finding of fact or a legal ruling would conflict with those made by a foreign court." *Id.* Plaintiff argues that dismissal on this basis is likewise inappropriate under the doctrine of international comity, repeating its

---

[4] Defendant has not argued that the *Gilbert* public interest factor concerning "court congestion" supported dismissal on *forum non conveniens* grounds. Dkt. 13 at 19.

arguments why dismissal was not appropriate on grounds of *forum non conveniens* or due to the absence of a purported necessary party. Dkt. 20 at 24–25.

"International comity is 'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its law.'" *In re French*, 440 F.3d 145, 152 (4th Cir. 2006) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). Defendant's argument that international comity warrants dismissal is unpersuasive. The Court concludes that the considerations that the Fourth Circuit has stated should guide inquiry into international comity dismissal, drawn from the Restatement (Third) of Foreign Relations Law § 403 (1987), do not tip the balance of interests toward a prospective German forum rather than this forum. *See In re French*, 440 F.3d at 153.[5] The Court notes that, at present, there is no foreign judgment or pending proceeding to which this Court might defer. Defendant has offered nothing but speculation that there will be such a competing proceeding in Germany. *See* Dkt. 13 at 22. Further, in this case, a German company has exercised its option under a forum selection clause to sue a Virginia company in a federal court in Virginia. Dkt. 1-1 at 5 (§ 10.2). Alleged unlawful conduct by the Defendant Virginia company occurred in Virginia. As discussed above, this is not a purely local dispute involving German parties and conduct at issue in Germany. Especially given that Plaintiff's claims involve federal law and United States trademarks, interests weigh in favor of having those claims heard

---

[5] "The Restatement looks to, *inter alia*, "the extent to which the activity takes place within the territory' of the regulating state, 'the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated,' 'the extent to which other states regulate such activities,' or 'may have in interest in regulation [them],' the 'likelihood of conflict with regulation by another state,' and 'the importance of regulation to the regulating state.'" *In re French*, 440 F.3d at 153 (quoting Restatement (Third) of Foreign Relations Law § 403 (1987)).

here, especially considering it is undisputed that a German court would only consider the contract claim, not those federal law claims. Any likelihood of conflict with any German court proceeding is speculative at this time. Moreover, as the Court has described in its *forum non conveniens* analysis, considerations of convenience weigh decisively in favor of retaining this case in Virginia rather than dismissing in favor of a German forum. Defendant has, at bottom, shown no good reason why in this case international comity warrants dismissal in favor of a German forum, and accordingly the motion is denied in this respect.

*        *        *

For these reasons, the Court concludes that Defendant's motion to dismiss must be denied. An accompanying Order will issue.

The Clerk of Court is directed to send this memorandum opinion to all counsel of record.

Entered this  27th day of April, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE